IN THE UNITED STATES DISTRICT COURT
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
EASTERN DIVISION

| | | |
|---|---|---|
| KIJEL GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 5392 |
| | ) | |
| BIRSHARI PATEL, KENLYNN GROTE, | ) | |
| BOB BUTTAGLIO, Dr. PARTHA GHOSH, | ) | |
| TERRY McCANN, Dr. ANDREW TILDEN, | ) | |
| OLIVER HENDERSON, BOB CATTANCO | ) | |
| and Dr. LAWRENCE NGU, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Kijel Grant filed this lawsuit *pro se* under 42 U.S.C. § 1983 against Birshari Patel, Kenlynn Grote, Bob Buttaglio, Dr. Partha Ghosh, Terry McCann, Dr. Andrew Tilden, Oliver Henderson, Bob Cattanco, and Dr. Lawrence Ngu (collectively "Defendants") alleging deprivations of Grant's Eighth Amendment rights while an inmate at Stateville Correctional Center. On April 15, 2009, the court from the bench announced that it granted defendant Dr. Lawrence Ngu's motion to dismiss [20] and denied defendant Oliver Henderson's motion to dismiss [25] with a written opinion to follow. The court's analysis in support of its April 15, 2009 order is set forth in this memorandum opinion and order.

# BACKGROUND[1]

On April 29, 2003, plaintiff Kijel Grant, an inmate at Stateville Correctional Center, sought medical attention for his lower back. (Compl. ¶¶ 2, 24.) At that time, defendant Dr. Lawrence Ngu, a medical doctor at Stateville, told Grant that he had "muscle spasms and to stop being so careless." (*Id.* ¶¶ 12, 25.) Almost two years later, on February 2, 2005, Grant made an urgent request to see a physician about his lower back. (*Id.* ¶ 27.) Grant informed Dr. Ngu that he was still in severe pain and that Grant had requested to see someone about the pain for a long time. (*Id.* ¶ 28.) Dr. Ngu told Grant "to stop being careless and that it was [Grant's] fault his back continues to hurt." (*Id.* ¶ 29.) When asked by Grant if he could receive an MRI, Dr. Ngu stated "that [Grant] was not worth the money they would have to spend." (*Id.* ¶ 30.)

In the later months of 2005 and during the year of 2006, Grant sought medical attention from defendant Oliver Henderson, a correctional officer at Stateville. (*Id.* ¶¶ 11, 32.) Grant asked Henderson on a daily basis if Grant could talk to medical personnel about his back. (*Id.* ¶ 33.) Henderson's response was to scorn Grant with vulgar language and negative feedback. (*Id.*) Specifically, in August of 2005, Henderson told Grant that he "hope[s] [Grant's] back becomes worse and that [Grant] get[s] paralyzed," and, in September of 2005, that Grant was "a grown man crying like [a] bitch." (*Id.* ¶ 34.) During the year of 2006, Grant complained continuously about his back to the Stateville correctional staff. (*Id.* ¶ 40.)

On May 26, 2006, Grant was unable to stand straight-up. (*Id.* ¶ 48.) After a "long time" in pain, Grant got approval for an MRI from defendant Dr. Partha Ghosh. (*Id.* ¶ 53.) The MRI showed that Grant had two herniated discs, for which Grant received physical therapy. (*Id.* ¶

---

[1] The facts set forth in this opinion, unless otherwise noted, are taken from the allegations in Grant's complaint [6], and are accepted as true. Grant's complaint [6] was formally filed on October 10, 2008, after Grant was given permission to proceed *in forma pauperis*. Grant initially submitted his complaint to the Clerk of the Northern District of Illinois on September 22, 2008 [1], which is the operative date for purposes of the statute of limitations analysis in this opinion.

54.) For months, Grant complained to Dr. Ghosh that the physical therapy did not relieve Grant's pain. (*Id.* ¶ 55.) In the late months of 2006, Grant began to experience severe lower abdominal pain and urinary pain, which caused Grant to complain to the Stateville correctional officers and medical staff. (*Id.* ¶¶ 58-59.)

On September 22, 2008, Grant sought *in forma pauperis* status to file his complaint against the Defendants alleging that Grant suffered unnecessary delay and wanton infliction of pain by the Defendants' deliberate indifference to Grant's herniated discs and lower abdominal/urinary pain, in violation of Grant's Eighth Amendment right to be free from cruel and unusual punishment.

## LEGAL STANDARD

In their respective motions to dismiss, Henderson and Dr. Ngu contend that each is entitled to dismissal of Grant's section 1983 claim because the statute of limitations had run on Grant's claim before September 22, 2008, the date Grant initially submitted his complaint for filing. When considering a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Sigsworth v. City of Aurora*, 487 F.3d 506, 508 (7th Cir. 2007). "[B]ecause the period of limitations is an affirmative defense it is rarely a good reason to dismiss under Rule 12(b)(6)." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). However, ;2638;2644;2645;2638;2644;2645"dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009) (citing *Hollander v. Brown,* 457 F.3d 688, 691 n. 1 (7th Cir. 2006)). Complaints by *pro se* plaintiffs are to be generously construed and not held to the stringent standards expected of pleadings drafted by

lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006).

It is well established that the statute of limitations for claims brought pursuant to section 1983 is the forum state's statute of limitations for personal injury claims. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). In Illinois, the statute of limitations on personal injury claims is two years, 735 ILL. COMP. STAT. 5/13-202 (2007), and therefore the limitation period on Grant's section 1983 claim is two years. *Id.* Although Grant's formal filing date was October 10, 2008, Grant, as noted earlier, is considered to have filed his complaint on September 22, 2008 for the purpose of determining the limitations period. *Robinson v. Doe*, 272 F.3d 921, 922-23 (7th Cir 2001) ("The complaint is 'filed' for purposes of this rule when the court clerk receives the complaint, not when it is formally filed in compliance with all applicable rules involving filing fees and the like . . . .") (citations omitted).

To state an Eighth Amendment claim of deliberate indifference to a serious medical need, Grant must allege that "(1) he had a serious medical need and (2) the defendants were deliberately indifferent to it." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (citing *see Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001)). An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (quoting *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000)). As to the second prong, deliberate indifference requires "the prisoner to show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of

treatment posed to the prisoner's health or safety from the lack of treatment." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

## ANALYSIS

Henderson argues that Grant's claim against him must be dismissed because the only incidents involving Henderson occurred outside of the two-year statute of limitations period. In support of this argument, Henderson asserts that Grant has identified two specific conversations he had with Henderson in August and September of 2005, and Henderson concludes that "all of the allegations made against Defendant Henderson occurred in 2005." (Henderson's Mot. to Dismiss at 3.) Because Grant's complaint is deemed "filed" on September 22, 2008, more than two years after the alleged constitutional violations by Henderson in 2005 occurred, Henderson argues that Grant's claim falls outside of the limitations period and must be dismissed.

The problem with Henderson's argument is that it ignores other paragraphs of Grant's complaint, which effectively put Henderson on notice of alleged constitutional violations that occurred within the limitations period. Specifically, Grant alleges that he sought medical attention from Henderson "in the later months of 2005 and *the year of 2006*" (Compl. ¶ 32) (emphasis added) and "would inquire" of Henderson "daily" (*Id.* ¶ 33) to talk to medical personnel. Grant's complaint also alleges that Grant "complained continuously" to the correctional staff about his back "in the year of 2006" (*Id.* ¶ 40), and "complained to correctional officers" about "severe lower abdominal pain and urinary pain" that he began experiencing in "the late months of 2006." (*Id.* ¶¶ 58-59.) Grant's complaint alleges that Henderson's only response to his inquiries about his back was to "scorn [Grant] with vulgar language and negative feedback." (*Id.* ¶ 33.) The court finds that Grant has sufficiently pled factual allegations

regarding events alleged to have occurred after September 22, 2006 against Henderson. Henderson's motion to dismiss is therefore denied.

Dr. Ngu has also moved to dismiss Grant's claim against him because it was brought after the two-year statute of limitations had expired. In his complaint, Grant identified February 2, 2005 as the latest day that Dr. Ngu saw Grant about the pain in his back. Because Grant filed his complaint on September 22, 2008, more than two years after Dr. Ngu had last been in contact with Grant, Dr. Ngu argues that Grant's section 1983 claim is barred by the statute of limitations.

The court agrees that Grant has failed to state a claim against Dr. Ngu for deliberate indifference that took place within the two-year limitations period. To be held liable under section 1983 for deliberate indifference to a serious medical need, Dr. Ngu must have personally disregarded an excessive risk to Grant's health or safety. *See Farmer,* 511 U.S. at 837 ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety . . . ."). Because Dr. Ngu's personal involvement with Grant ended in February 2005, the statute of limitations on any claim Grant may have had against Dr. Ngu expired in February 2007. Grant's September 22, 2008 complaint was therefore filed outside of the statute of limitations insofar as it alleges a claim against Dr. Ngu.

Grant attempts to rescue his claim against Dr. Ngu by citing to the entire complaint and arguing that he "continued to complain about his lower back up until the present time." (Grant's Resp. at 3.) However, the court finds no allegations in the complaint that can be reasonably read to suggest that Grant had any contact with Dr. Ngu at any time within the limitations period. Rather, it appears that Dr. Ghosh was the individual to whom Grant continued to complain about his back pain. (Compl. ¶¶ 55-56.)

Grant also argues that the doctrines of equitable tolling and equitable estoppel should apply to the statute of limitations, because Grant had difficulty ascertaining the identity of Dr. Ngu in a timely manner. (Grant's Resp. at 4-6.) Specifically, Grant contends that he requested the names of treating physicians and access to his medical records in order to identify the physician he saw on April 29, 2003, but prison officials repeatedly denied his requests. (*Id.* at 4.)

Equitable principles may apply if extraordinary circumstances prevent a plaintiff from filing suit within the limitations period. *See Griffin v. Willoughby*, 867 N.E.2d 1007, 1016 (Ill. App. Ct. 2006). The court is not persuaded that such circumstances are present in this case. Grant brought the current suit on the "information and belief" that Dr. Ngu was the physician that Grant saw on April 29, 2003. (Compl. ¶ 25.) Grant does not explain when or how he acquired the information that led him to believe that Dr. Ngu was his treating physician on April 29, 2003; however, Grant does assert that he lacks access to his medical records to this day, thus impairing his ability to file his claim in a timely manner. (Grant's Resp. at 4.) Grant has nevertheless come to the conclusion that Dr. Ngu was his treating physician on April 29, 2003, despite Grant's apparent lack of access to his medical records. Because Grant has not explained when or how Grant determined the identity of Dr. Ngu, the court cannot determine whether extraordinary circumstances prevented Grant from determining Dr. Ngu's identity at an earlier date, within the limitations period. Grant has not persuaded this court that equitable principles should apply to toll the statute of limitations as to Dr. Ngu. Consequently, Dr. Ngu's motion to dismiss on the grounds that Grant's complaint was filed beyond the period of statute of limitations is therefore granted.

CONCLUSION

For the foregoing reasons, the court has granted defendant Dr. Lawrence Ngu's motion to dismiss and has denied defendant Oliver Henderson's motion to dismiss.

ENTER:

_____
Chief Judge, United States District Court

Date: April 30, 2009