IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIJEL GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 5392 |
| | ) | |
| AMRUTLAL PATEL, KENLYNN GROTE, | ) | |
| ROBERT CATTANEO, Dr. PARTHA GHOSH, | ) | |
| TERRY McCANN, and OLIVER HENDERSON, | ) | |
| | ) | |
| Defendants.[1] | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Kijel Grant ("Grant") has filed a one-count complaint against defendants Amrutlal Patel ("Patel"), Kenlynn Grote ('Grote"), Robert Cattaneo ("Cattaneo"), Partha Ghosh ("Dr. Ghosh"), Terry McCann ("Warden McCann"), and Oliver Henderson ("Henderson"), alleging that these defendants were deliberately indifferent to Grant's serious medical needs with respect to a severely herniated disc in Grant's lower back, lower abdominal pain, and urinary pain during Grant's incarceration at the Stateville Correctional Center in Joliet, Illinois ("Stateville"), in violation of Grant's constitutional rights and 42 U.S.C. § 1983. Pending before the court are motions for summary judgment filed by Dr. Ghosh (Dkt. No. 118) and by Patel, Cattaneo, Grote, Henderson, and Warden McCann (collectively "State Defendants") (Dkt. No.

---

[1] In his Complaint, Grant incorrectly names "Birshari Patel" and "Bob Buttaglio" as defendants. It is undisputed that these two individuals have since been correctly identified as "Amrutlal Patel" and "Robert Cattaneo." Defendants Andrew Tilden and Lawrence Ngu have been previously dismissed from this lawsuit. (*See* Dkt. Nos. 50-52.)

1

121). For the reasons set forth below, State Defendants' motion is granted in part and denied in part, and Dr. Ghosh's motion is granted. Judgment is entered in favor of State Defendants on all claims against Patel, Grote, Henderson, and Warden McCann, and in favor of Dr. Ghosh. Grant's deliberate indifference claim against Cattaneo for failure to refer Grant for medical treatment regarding his urinary infection and abdominal pain remains pending.

BACKGROUND

Grant was at all relevant times incarcerated at Stateville, where his constitutional violations are alleged to have occurred. At the time of the alleged violations, all defendants were employed at Stateville. Both Patel and Cattaneo were employed as Correctional Medical Technicians ("CMTs"), Grote was employed as a Nurse, and Henderson was employed as a Correctional Officer. Dr. Ghosh was the Medical Director at Stateville. Warden McCann served as Warden.

1. Grant's Interactions with Cattaneo

Between 2005 and 2008, it was the policy at Stateville for an inmate to first inform a CMT of any medical complaint. If the CMT was unable to resolve the problem, the second level of the "sick call" process—"MD Sick Call"—would be implemented. Cattaneo was a regular CMT for Grant's cell house in 2005 and 2006, where he made rounds once a day or every other day.

Grant alleges that, in 2006, he sought medical attention for his back from Cattaneo on numerous occasions. At his deposition, Grant testified that, in response, Cattaneo "used vulgar language, was rude, [and ] ignored [Grant]." (Dkt. No. 128 ("State Defs.' SMF") ¶ 21.) Cattaneo told Grant that "he heard about [Grant] already and that if [Grant] was not dying then

don't bother him anymore." (*Id.* ¶ 23.) On another occasion, Cattaneo told Grant that, if he stopped Cattaneo "to talk about his back one more time[,] [Cattaneo] was going to write [Grant] a disciplinary ticket" and that Grant "was just whining for nothing." (*Id.* ¶ 24.) According to Grant, Cattaneo referred to Henderson "as being the main reason that [Cattaneo] wouldn't talk to [Grant]." (*Id.* ¶ 21.)

J.B. Boston ("Boston"), Grant's cell-mate in the later part of 2006, stated under oath that Grant often slept on the floor of their cell to ease his back pain, and that he witnessed Cattaneo's refusal of Grant's request to talk to Dr. Ghosh for purposes of receiving a "low-bunk(bed) medical permit." (Dkt. No. 131 at 16-19 ("Grant's Add'l Facts") ¶ 11; *see also* Grant's Ex. K ¶¶ 16, 18.)

According to Grant's deposition testimony, for most of 2007, Cattaneo again displayed hostility during his encounters with Grant. Specifically, in November 2007, Grant requested medical attention for his abdominal pain and urinary pain from Cattaneo, who responded "you again, ain't nothing wrong with you, you big baby." (State Defs.' SMF ¶ 26.)

2. Grant's Interactions with Henderson

Grant alleges that, in the later months of 2005 and 2006, he also sought medical attention from Henderson. At his deposition, Grant testified that, on two occasions in August 2005 and September 2005, Henderson told Grant "he hope[d] [Grant's] back became worse and that [Grant] get[s] paralyzed." (*Id.* ¶ 40.) Also in September 2005, Henderson told Grant "you are a grown man crying like a bitch." (*Id.*)

According to Larry Hollings ("Hollings"), Grant's cell-mate from June 2005 through April 2006, Henderson "constantly ignored" Grant's attempts to get Henderson's attention, told

3

Grant that he would not receive medical attention, and used derogatory language toward Grant. (Grant's Add'l Facts ¶¶ 1-3; *see also* Grant's Ex. M ¶¶ 7-10.) Hollings also stated under oath that he heard Henderson threaten Grant with retaliation if Grant reported Henderson's lack of assistance.

Donald McDonald ("McDonald"), an inmate located in the cell next to Grant's in the later half of 2005, likewise stated under oath that he witnessed Henderson using derogatory language toward Grant in response to Grant's requests for medical attention. Similarly, Grant's later cell-mate, Boston, stated under oath that, in November 2006, he witnessed Henderson's refusal of medical treatment to Grant for his back pain and abdominal pain. Boston further stated that Grant often slept on the floor of their cell to ease his back pain, and that, while in Boston's presence, Henderson refused Grant's request for a transfer to a cell with a lower bunk bed while.

3. Grant's Interactions with Patel

Grant alleges that, on May 26, 2006, while outside in the "yard" area, Grant requested medical attention for his back because he could not stand straight-up after having bent down. At his deposition, Grant testified that Patel responded by asking Grant, "What's the problem?," asking Grant his age, and asking whether Grant thought he could walk to the infirmary. (State Defs.' SMF ¶ 58.) According to the Correctional Counselor's official response to Grant's June 6, 2006 grievance, "Lieutenant Goodwin stated that he witnessed Medical Technician Patel asking inmate how old he was. Then telling inmate he was to [sic] young to ride in wheelchair."

4

(Grant's Add'l Facts ¶ 26.)² Ultimately, Grant had to walk to the infirmary for treatment without the aid of a wheelchair. At the infirmary, Grant was examined by Dr. Tilden, who then referred Grant to Dr. Ghosh for further treatment.

According to Grant's deposition testimony, Grant later encountered Patel on three separate occasions in 2006 and 2007. Patel was hostile, rude, and vulgar in response to Grant's requests for further medical attention.

4.      Grant's Interactions with Grote

Grant alleges that, from December 2007 through July 2008, Grote made rounds in Grant's cell house. At his deposition, Grant testified that he sought medical attention from Grote on various occasions during this time period, and that Grote's responses were rude, negative, and vulgar.

Antwauo Cubie ("Cubie"), Grant's cell-mate in late 2007 and early 2008, stated under oath that he witnessed three separate occasions on which Grote refused Grant's requests for medical assistance for his back pain and abdominal pain. In January 2008, Grote told Grant that she did not have time for his petty problem and ignored Grant's request for medical care. A few days later, Grote again refused to provide medical assistance to Grant in response to his request for care. In February 2008, after Grant informed Grote that he was having trouble sleeping and walking due to the pain in his back and that he was still having trouble urinating, Grote again

---

² State Defendants have objected to this evidence as inadmissible hearsay. Because Grant cannot establish a genuine issue of material fact for trial against Patel, even considering this evidence, the court need not make an evidentiary determination at this time. Similarly, the court denies State Defendants' request that the court strike Grant's response to State Defendants' statement of material facts and Grant's statement of additional facts for failure to comply with Local Rule 56.1.

refused to provide medical assistance to Grant.

5. <u>Grant's Interactions with McCann</u>

According to Grant's deposition testimony, Grant complained to Warden McCann several times in 2006 and 2007, both in person and through grievances and letters, regarding his condition and his inability to receive medical care. McCann responded to Grant's oral complaints by telling Grant that he did not care, and by advising him to inform medical personnel.

6. <u>Grant's Interactions with Dr. Ghosh and Related Medical Treatment</u>

Dr. Ghosh first examined Grant with respect to his back pain on October 31, 2006. At that time, Dr. Ghosh referred Grant for an MRI, which was performed on November 30, 2006. The MRI revealed that Grant suffered from one or two herniated discs. (*Compare* Ghosh's Dep. 19:11-22 *with* Ghosh's Dep. 31:13-15.) On February 1, 2007, Grant was seen by a neurosurgeon for consultation. This doctor recommended that Grant receive epidural steroid injections before considering surgery. On February 27, 2007, Grant was seen at the UIC pain clinic. Doctors there recommended Tramadol for Grant's back pain and indicated that Grant would be considered for epidural steroid injections if the pain continued. On May 9, 2007, Grant was evaluated for physical therapy. The next day, Grant was seen again at the UIC pain clinic, where he received a lumbar epidural steroid injection. When Grant attended physical therapy on May 16, 2007, he reported that the injection had made no difference in his pain. Grant was seen again at the UIC pain clinic on June 26, 2007, at which point Grant indicated that he did not want the

epidural steroid injection, and would like to continue conservative treatment. Grant was either seen or scheduled for physical therapy on numerous occasions between May 2007 and January 2008.

On May 28, 2008, Dr. Ghosh examined Grant with respect to Grant's concerns about persistent protein in his urine. Dr. Grant then performed additional testing in June 2008, the results of which fell within a normal range. On July 16, 2008, Grant was seen by a physician's assistant for low back pain and problems with protein in his urine. Two months later, on September 15, 2008, Grant was seen by a physician regarding low back pain and possible protein in his urine. Grant was eventually prescribed antibiotics for his urination problems.

Dr. Ghosh again examined Grant with respect to his back pain on October 8, 2008. At that time, Dr. Ghosh referred Grant to UIC for another MRI and a surgical consult. On November 10, 2008, Grant was seen by Dr. Slavin at UIC. Dr. Slavin recommended that Grant not have surgery, and further recommended steroid injections. On December 10, 2008, Grant was sent to UIC for a lumbar steroid injection as recommended by Dr. Slavin. On January 20, 2009, Grant was again seen at the UIC pain clinic, where doctors recommended a change in Grant's medication. This change was approved by Dr. Ghosh. On February 20, 2009, Grant was again seen at the UIC pain clinic, where doctors recommended that Grant start Neurontin. Dr. Ghosh approved of this change, as well.

7. <u>Grant's Record of Grievances</u>

On June 6, 2006, Grant filed a grievance regarding Patel's May 26, 2006 refusal to transport Grant via wheelchair in response to Grant's request for medical treatment for his lower

back pain. The Grievance Officer's August 24, 2006 response notes that Grant received his requested relief on June 23, 2006, in the form of an MRI. The Grievance Officer deemed Grant's grievance to have been resolved, and Warden McCann concurred with this assessment on August 31, 2006. Noting that Grant also received an MRI on his lumbar spine on November 29, 2006, the Administrative Review Board similarly found that Grant's grievance was moot, and that there was no evidence of staff misconduct.

Grant also filed a grievance on March 22, 2008 regarding, in part, Cattaneo's failure to refer Grant for medical care for his urinary infection and abdominal pain. After Warden McCann approved emergency review of this grievance, the Grievance Officer reported that the Health Care Unit found nothing in Grant's chart supporting his concern that he was suffering from a blood infection. The Grievance Officer deemed Grant's grievance to have been resolved, and Warden McCann concurred with this assessment on March 26, 2008.

Grant stated at his deposition that "[t]hese don't look like all of my grievances," noting that he had filed "maybe like four or five" additional grievances about his back pain and urinary problems. (Grant's Dep. 73:7-8; 116:5.) At the same time, however, Grant admitted that he lacked copies of his additional grievances, because "[s]ometime they don't send them to you." (Grant's Dep. 100:24-101:1.)

According to affidavits filed by Grievance Officer Colleen Franklin (State Defs.' Ex. D) and Correctional Counselor Sherwin Miles (State Defs.' Ex. E), Stateville has no record of Grant complaining about or filing a grievance regarding: (1) Henderson's failure to respond to or take action when confronted with Grant's injuries; (2) Henderson's hostility and rude language when responding to Grant's injuries; (3) McCann's failure to respond to requests for medical care; (4)

8

McCann's failure to require staff to follow medical procedures; (5) Grote's hostility and rude language when responding to Grant's injuries; (6) Grote's failure to refer Grant for medical care regarding his injuries; (7) Cattaneo's hostility and rude language when responding to Grant's injuries; (8) Cattaneo's failure to refer Grant for medical care regarding his back pain; (9) Patel's hostility and rude language when responding to Grant's urine infection/abdominal pain; or (10) Patel's failure to take Grant for medical care regarding his urine infection/abdominal pain.

## LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'material' only if the dispute's resolution might change the outcome of the suit under the governing law." *Spivey v. Adaptive Marketing LLC*, 622 F.3d 816, 822 (7th Cir. 2010). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007).

Once a defendant has adequately challenged an element of the plaintiff's claim, it becomes the plaintiff's burden "to identify specific facts in the record that demonstrate[ ] a genuine issue for trial." *Crawford v. Countrywide Home Loans, Inc.*, __ F.3d __, No. 10-3135, 2011 WL 2906157, at *4 (7th Cir. July 21, 2011). If the plaintiff fails to make this showing regarding "an element essential to [his or her] case, and on which [he or she] will bear the burden of proof at trial," the court is required to grant summary judgment in favor of the defendant. *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 743 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

9

When ruling on a motion for summary judgment, the court must consider the facts before it in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

ANALYSIS

Pursuant to the Eighth Amendment's prohibition against cruel and unusual punishment, prisoners have a right to medical care during the time of their incarceration. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). A prison official's "deliberate indifference to [the] serious medical needs" of a prisoner constitutes a violation of this right. *Id.* (citing *Estelle*, 429 U.S. at 104).

To support a claim of deliberate indifference, a plaintiff must satisfy two requirements. First, the plaintiff must prove that his or her medical need was "sufficiently serious" to trigger the Eighth Amendment's protections. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). "A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Second, a successful plaintiff must prove that "prison officials acted with a 'sufficiently culpable state of mind.'" *Roe*, 631 F.3d at 857 (internal quotation marks omitted). This means that a prison official "actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002); *see also Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was

obvious." *Farmer*, 511 U.S. at 842. On the other hand, "[a] negligent or inadvertent failure to provide adequate medical care is insufficient to state a section 1983 claim." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

"A medical professional acting in his [or her] professional capacity may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Roe*, 631 F.3d at 857 (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)).

1. Exhaustion of Administrative Remedies

The State Defendants first argue that Grant failed to exhaust his administrative remedies before filing his complaint in federal court. Because the question of failure to exhaust is an antecedent issue to the adjudication of this case on the merits, *see Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999), the court addresses this argument at the outset.

The Prison Litigation Reform Act of 1995 requires a prisoner to exhaust available administrative remedies before filing a suit with respect to prison conditions. 42 U.S.C. § 1997e(a). The Seventh Circuit has strictly interpreted this exhaustion requirement to include "fil[ing] complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). It is undisputed that Stateville has a formal administrative grievance procedure for prisoners, as outlined in detail by State Defendants in their memorandum and accompanying statement of facts.

In this case, there is no evidence that Grant filed any grievances regarding the acts or

omissions of Henderson, Grote, or McCann.³  Likewise, there is no evidence that Grant filed any grievances addressing Cattaneo's response, or lack thereof, to Grant's requests for medical care to relieve his back pain, nor is there evidence that Grant filed any grievances addressing Patel's response, or lack thereof, to Grant's requests for medical care regarding his urinary infection and abdominal pain.  To the extent Grant has testified that he filed additional grievances about his back pain and urinary problems, the court finds this evidence too vague to establish a genuine issue of material fact.  Grant has not explained when he filed these grievances, the individuals named or events addressed in these grievances, or the resolution of these grievances.  Without more, the court finds that no reasonable fact-finder could conclude that Grant filed any additional grievances other than the June 6, 2006 grievance and the March 22, 2008 grievance.

Summary judgment is therefore appropriate in favor of Henderson, Grote, and McCann on all of Grant's pending claims against them.  State Defendants concede that "Plaintiff did exhaust his administrative remedies with respect to Defendant CATTANEO for failure to refer Plaintiff for medical treatment for his urinary infection/abdominal pain, and the claim against Defendant PATEL for failure to take him via wheelchair for medical treatment regarding his lower back pain."  (Dkt. No. 123 ("State Defs.' Mem.") at 7, n.1.)  The court therefore addresses Grant's claims for deliberate indifference against these defendants on the merits.

2.  Defendant Patel

With respect to Grant's interactions with Patel on May 26, 2006, State Defendants

---

³ Dr. Ghosh has not raised this affirmative defense, and the parties have presented no evidence with respect to Grant's grievances against Dr. Ghosh.  *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536 (7th Cir. 1999) ("Defendants may waive or forfeit reliance on § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations.").

summarize the evidence regarding Grant's interactions with Patel and conclude that Grant "cannot show that Defendant Patel was aware of Plaintiff's serious medical condition and consciously disregarded a risk to his health." (*Id.* at 14.)

Grant, in turn, relies on Patel's comment that Grant "was [too] young to ride in a wheelchair" as evidence that Patel was deliberately indifferent to Grant's serious medical need for medical care to relieve his back pain. (Dkt. No. 130 ("Grant's Resp.") at 7.)

As discussed above, it is ultimately Grant's burden to demonstrate that Patel "actually knew of a substantial risk of harm to [Grant] and acted or failed to act in disregard of that risk." *Walker*, 293 F.3d at 1037. At the summary judgment stage, once State Defendants challenged this element of Grant's claim, it became Grant's burden "to identify specific facts in the record that demonstrate[ ] a genuine issue for trial." *Crawford*, 2011 WL 2906157, at *4. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. In this case, there is no direct evidence that Patel knew of a substantial risk of harm to Grant, and the circumstantial evidence is slim. A reasonable fact-finder could conclude that Patel was aware that Grant was generally suffering from back pain, but the specifics regarding what Patel heard or saw are not in the record.[4] It is therefore impossible for a fact-

---

[4] Grant alleges in his complaint that he "essentially bent down and could not stand straight-up anymore [and] . . . immediately yelled for assistance." (Compl. ¶ 48.) A plaintiff "cannot succeed in creating a factual dispute, however, solely by pointing to allegations in [his or her] pleading." *Valance v. Wisel*, 110 F.3d 1269, 1274 (7th Cir. 1997). Grant has made no attempt to support this allegation with citations to depositions, affidavits, declarations, or any other evidentiary materials. *See* Fed. R. Civ. P. 56(c)(1)(A).

finder to conclude that Grant's risk of serious harm was either obvious or known to Patel. In short, the record does not demonstrate anything about the circumstances under which Patel encountered Grant. "Summary judgment is the 'put up or shut up' moment in litigation," and it is Grant's burden to "present evidence on which a reasonable jury could rely tending to prove [his] claim." *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011). Grant has not done so with respect to his claim against Patel, and summary judgment is therefore appropriate in favor of Patel.

3.  Defendant Cattaneo

State Defendants' argument in support of their motion for summary judgment in favor of Cattaneo focuses on the time period from 2005 through 2006, when Cattaneo was the regular CMT for Grant's cellblock. It is State Defendants' position that, because Grant received medical care on numerous occasions during this time period, Cattaneo could not have been "ignoring or dismissing [Grant's] requests for medical attention." (State Defs.' Mem. 10.)

One problem with this argument is that it addresses the wrong time period. Grant's complaints to Cattaneo regarding his urinary and abdominal pain took place in November 2007, not 2005 or 2006. Moreover, even if the court considers State Defendants' arguments regarding the claim against Grote to be applicable to Cattaneo, State Defendants have cited no evidence that Grant was seen *for urinary and abdominal pain* at any time in 2007. State Defendants rely on the affidavit of Royce Brown-Reed ("Brown-Reed"), Stateville's Health Care Unit Administrator, which states only that Grant was "taken for outside physician consultations" and "seen by" Stateville physical therapists, psychologists, and medical doctors on numerous occasions in 2007. (State Defs.' Ex. G ¶ 19.) To the extent Brown-Reed's affidavit addresses

14

Grant's ailments at all during this time period, Brown-Reed refers only to treatment for Grant's lower back pain. (*Id.*)

Because there is no evidence supporting State Defendants' contention that "Cattaneo ensured that the Plaintiff saw medical personnel" in response to Grant's complaints of urinary and abdominal pain in 2007 (State Defs.' Mem. 10), and there is evidence that Cattaneo, in fact, told Grant "ain't nothing wrong with you, you big baby" (State Defs.' SMF ¶ 26), the court finds that summary judgment is not appropriate in favor of Cattaneo on Grant's deliberate indifference claim.

State Defendants also argue that "Plaintiff cannot show that his urine infection/abdominal pain constitute a serious medical condition." (State Defs.' Mem. 4.) This single sentence, standing alone in a fifteen-page brief without further elaboration, is inadequate for purposes of triggering Grant's duty to demonstrate a genuine issue of material fact on this point. Accordingly, the court denies State Defendants' motion for summary judgment with respect to Grant's claim against Cattaneo.

4. Dr. Ghosh

Dr. Ghosh contends "[t]here is simply no evidence of deliberate indifference with regard to plaintiff's back condition." (Dkt. No. 120 ("Ghosh's Mem.") at 5.) In support of this argument, Dr. Ghosh refers to Grant's MRIs, steroid injections, medications, and physical therapy, as well as Grant's referral to two orthopedic surgeons, each of whom advised against back surgery.[5]

---

[5] Dr. Ghosh does not cite to his statement of material facts anywhere in his memorandum of support, but rather states "[a] review of the evidence, as set forth in defendant's statement of facts, shows that Dr. Ghosh was not deliberately indifferent to any of plaintiff's medical needs."

15

In response, Grant argues that Dr. Ghosh was aware "that the treatments that were provided were ineffective and untimely." (Dkt. No. 132 ("Grant's Resp. to Ghosh's Mem.") at 4.) Specifically, Grant notes that Dr. Ghosh "knew that Grant's condition remained unresolved despite his repeated requests for medical attention more than two years after Grant's initial diagnosis of two herniated disks." (*Id.* at 4-5.) The fact that Dr. Ghosh's treatments were ineffective does not, by itself, establish Dr. Ghosh's deliberate indifference to Grant's serious medical need. Rather, "[t]o infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). The evidence before the court demonstrates that each time Grant was examined by Dr. Ghosh, Dr. Ghosh ordered follow-up care. Grant does not offer any evidence suggesting that this follow-up care defied accepted professional standards. Similarly, while Grant argues that he received "untimely" treatment in the form of a one-month delay between his

---

(Ghosh's Mem. 1.) While citations to a party's own statement of material facts are not explicitly required by Local Rule 56.1, Dr. Ghosh's approach has needlessly burdened both the parties and the court. For example, Grant correctly notes that Dr. Ghosh's memorandum "fails to identify the dates on which Grant was provided with care." (Grant's Resp. 4.) Dr. Ghosh replies with the assertion that "Plaintiff apparently ignores the 26 paragraph statement of facts and the exhibits which outline the extensive medical care provided by Dr. Ghosh." (Ghosh's Reply 1.) It is Dr. Ghosh, not Grant, who has ignored his own statement of facts. As Judge Castillo advised more than ten years ago, a party moving for summary judgment ought to include citations to the 56.1(a) statement of facts within its own memorandum if for no other reason than the "purely prudential considerations" stemming from "a desire to succeed in one's task." *Malec v. Sanford*, 191 F.R.D. 581, 585-86 (N.D. Ill. 2000). Through his approach in this case, Dr. Ghosh has failed to assist the court in "the important function [of] organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Despite this procedural failure by Dr. Ghosh, the court nevertheless has proceeded to analyze Dr. Ghosh's motion on the merits. The court, however, advises counsel for Dr. Ghosh that in the future citation to the statement of facts is the path that should be followed.

October 31, 2006 consultation with Dr. Ghosh and his November 30, 2006 MRI, Grant presents no evidence that Dr. Ghosh knew of this delay, that Dr. Ghosh had the ability to control the timing of Grant's MRI, or that the delay defied accepted professional standards. Simply put, no reasonable fact-finder could conclude on the record before the court that Dr. Ghosh's treatment plan for Grant's back pain constituted "woefully inadequate action." *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998).

Dr. Ghosh also argues that Grant "did not have a serious medical condition regarding protein in his urine." (Ghosh's Mem. 5.) In support of this argument, Dr. Ghosh notes that Grant's follow-up testing showed normal levels of protein in his urine. Grant contends that there is a triable question of fact on this point, in light of the need for two separate tests to diagnosis his condition. As noted above, "[a] medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe*, 631 F.3d at 857 (quoting *Greeno*, 414 F.3d at 653). The only "treatment" mandated by Dr. Ghosh for Grant's high levels of protein was follow-up testing, and it is undisputed that Dr. Ghosh provided this treatment. Accordingly, any serious medical need Grant may have had in this regard was undeniably met. On this record, there is no genuine dispute of material fact requiring trial.

Grant argues that his problems with frequent urination also qualify as a serious medical need, noting that he was prescribed medication for this problem. It is undisputed that Grant was prescribed antibiotics for his urination problems. (Dkt. No. 133 at 6-9 ("Grant's Add'l Facts in

Resp. to Ghosh's SMF") ¶ 32.)[6] However, this prescription does not appear to have been personally made by Dr. Ghosh, and Dr. Ghosh disputes that he ever examined Grant regarding his complaints of urinary frequency and abdominal pain. In his statement of facts, Dr. Ghosh admits to treating Grant on May 28, 2008 for "persistent protein in his urine," but also notes that Grant had no other complaint at that time. (Dkt. No. 119 ("Ghosh's SMF") ¶ 18 (citing Ghosh's Ex. B at 22).)[7] The only evidence in the record regarding Grant's prescription for antibiotics—Dr. Ghosh's deposition testimony—suggests that this prescription was given on or around January 28, 2009, which is eight months after Grant's visit with Dr. Ghosh. In his reply brief, Dr. Ghosh further cites his own deposition testimony that he "did not see or treat Grant for any complaints of frequent urination or abdominal pain." (Dkt. No. 135 ("Ghosh's Reply") at 3 (citing Ghosh's Dep. 47:21-24).) "[T]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006)). Because there is no evidence before the court demonstrating that Dr. Ghosh knew about Grant's problems with urinary frequency and abdominal pain, and disregarded a

---

[6] Specifically, Dr. Ghosh interpreted his January 28, 2009 progress notes as follows: "This is a review of the note by a neurosurgeon and here they are recommending a spinal epidural injection, steroid injection for back ache and we prescribed some pain medication and he was referred to—and he was given prescribed medication for his urinary frequency when he complained of urethritis so he was given some antibiotics and he was referred for an epidural injection." (Ghosh's Desp. 73:16-74:5.)

[7] Grant denies this statement with no explanation and no citation to contradictory evidence. The court therefore accepts Dr. Ghosh's version of the facts as true. *See* Local R 56.1(b)(3) (requiring "specific references to the affidavits, parts of the record, and other supporting materials relied upon" in the case of any disagreement, and noting that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party").

known risk to Grant's health, Grant cannot establish a claim of deliberate indifference against Dr. Ghosh.

## CONCLUSION

For the reasons set forth above, Dr. Ghosh's motion for summary judgment (Dkt. No. 118) is granted and State Defendants' motion for summary judgment (Dkt. No. 121) is granted in part and denied in part. Judgment is entered in favor of State Defendants on all claims against defendants Amrutlal Patel, Kenlynn Grote, Oliver Henderson, and Terry McCann, and judgment is entered in favor of Partha Ghosh. Grant's deliberate indifference claim against Robert Cattaneo for failure to refer Grant for medical treatment regarding his urinary infection and abdominal pain remains pending. The parties are encouraged to discuss a reasonable settlement. Counsel are to file an amended Form 52 on or before September 27, 2011 regarding the schedule for the remainder of this case. The case is set for a report on status and entry of a final scheduling order on October 4, 2011.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: September 12, 2011